
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 699 | **DATE** | 6/7/2001 |
| **CASE TITLE** | USA vs. The Premcor Refining Group, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing reset to June 28, 2001 at 10:00 a.m. Status hearing set for June 14, 2001 is vacated. Enter Memorandum Opinion and Order. The Government's motion to bar defendants' mistake-of-law defenses is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 08 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 73 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | | |
| | | 01 JUN -7 PM 3:42 | date mailed notice | |
| RO | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 CR 699 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| THE PREMCOR REFINING GROUP, | ) | |
| INC., RONALD SNOOK and ELVA | ) | |
| CARUSIELLO, | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**
JUN 0 8 2001

## MEMORANDUM OPINION AND ORDER

In this case, Defendants are charged in a twenty-nine count indictment with various offenses relating to the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq*. Presently before this Court is the government's motion to bar Defendants' mistake-of-law defenses. (R. 54-1.) For the reasons set forth below, we grant the government's motion.

### RELEVANT FACTS

The Premcor Refining Group, Inc. ("Premcor") owns a petroleum refinery near Blue Island, Illinois. At times material to this case, Ronald Snook was the environmental manager and Elva Carusiello was the assistant environmental manager at Premcor's Blue Island refinery. As part of its petroleum refining operations, Premcor produced wastewater containing various pollutants, including fats, oils and greases ("FOG"). Premcor's wastewater was discharged, via a sewer system owned and operated by the Metropolitan Water Reclamation District of Greater Chicago ("MWRD"), into the Little Calumet River. Premcor's wastewater discharges were regulated by the CWA, federal regulations promulgated under the CWA, as well as by an ordinance and discharge authorization developed by the MWRD.

73

Count One of the indictment charges Defendants with conspiracy to violate the CWA by failing to report wastewater violations, in violation of 18 U.S.C. § 371. Specifically, Defendants are alleged to have conspired to violate the CWA by: (1) failing to report Premcor's FOG and pH (a measure of how acidic or caustic the wastewater is) wastewater violations to the MWRD within twenty-four hours of becoming aware of them; and (2) failing to submit all of Premcor's wastewater self-monitoring results to the MWRD. (*See* R. 1-1, Indictment, Count One.) Counts Two through Six charge Defendants with knowingly and willfully falsifying, concealing and covering up material facts, in violation of 18 U.S.C. § 1001(a)(1). (*See id.*, Indictment, Counts Two through Six.) Counts Seven through Twenty-Nine charge Defendant Carusiello with aiding and abetting Premcor's violations of the CWA by failing to report Premcor's FOG and pH violations to the MWRD within twenty-four hours of becoming aware of the violations, in violation of 18 U.S.C. § 2 and 33 U.S.C. §§ 1317(d) and 1319(c)(2)(A). (*See id.*, Indictment, Counts Seven through Twenty-Nine.)

Presently before this Court is the government's motion to bar Defendants' mistake-of-law defenses. The government argues that the CWA is a general intent statute that does not require Defendants to know the illegality of their conduct to be found guilty of a CWA violation. Accordingly, the government contends that Defendants should be precluded from arguing that their mistaken belief in the legality of their conduct is a defense to conviction on the CWA charges of the indictment.[1] Defendants, on the other hand, argue that evidence of their knowledge and understanding of the applicable regulations and permits is relevant to an essential element of the government's conspiracy and aiding and abetting charges, which require the

---

[1] The government acknowledges that "certain of these mistake-of-law defenses may be used to rebut the charges contained in the counts of the indictment (Counts Two through Six) that allege a violation of 18 U.S.C. § 1001(a)(1)." (R. 54-1, Gov't's Mot. To Bar Defs.' Mistake-of-Law Defenses at 8.)

government to prove that Defendants intended to enter into a conspiracy to commit the underlying offense and intended to aid and abet the commission of the offense, respectively. Moreover, Defendants argue that mistake-of-law defenses are admissible in defense of offenses charged under § 1319(c)(2)(A) of the CWA, where the offenses are based on acts of omission. For the following reasons, we grant the government's motion to bar Defendants' mistake-of-law defenses and we preclude Defendants from arguing at trial that mistake-of-law is an appropriate defense to a violation of the CWA. We note, however, that Defendants are entitled to argue that the government has failed to meet its burden of proof that Defendants intended to enter into a conspiratorial agreement and that Defendants intended to aid and abet others.

## ANALYSIS

### I. The Knowledge Requirement of the CWA

The government argues that in order to secure convictions under the CWA, it need only show that Defendants "knowingly" violated the CWA. Under this "knowing" standard, the government contends that it must establish simply that Defendants were cognizant of the facts that form the basis of their criminal conduct, *i.e.*, that wastewater violations were not being reported to the MWRD. The government maintains that it need not show, however, that Defendants knew the wastewater violations had to be reported. As such, the government urges this Court to bar Defendants from arguing that their mistaken belief about wastewater reporting requirements is a defense to Count One and, in Carusiello's case, Counts Seven through Twenty-Nine of the indictment. Defendants argue, on the other hand, that because the charges against them are crimes of omission -- *i.e.*, Defendants' alleged failure to either report a wastewater violation or submit all wastewater test results to the MWRD -- the government must prove that

3

Defendants knew they had a duty to report all test results and knew that, if wastewater violations had occurred, they had to be reported.

## A. The Language and Legislative History of the CWA

Section 1319(c)(2)(A) of the CWA makes it a felony offense to "knowingly violate[ ] section . . . 1317 . . . of this title, or any permit condition or limitation implementing any of such sections issued under [various sections of the CWA]." *See* 18 U.S.C. § 1319(c)(2)(A). In interpreting the CWA, "as in all cases of statutory interpretation, the starting point of our analysis is the plain language of the statute itself." *United States v. Wagner*, 29 F.3d 264, 266 (7th Cir. 1994) (citations omitted).

Courts that have used methods of statutory interpretation to discern the clear meaning of the words "knowingly violates" in the context of the CWA and other similar statutes have concluded that those words do not create a specific intent crime and have based this conclusion on one or both of the following factors: (1) the principle that mistake-of-law is no defense; and (2) the public welfare doctrine. *See, e.g., United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971) (holding that a defendant would not be excused from criminal liability for violations of Interstate Commerce Commission ("ICC") regulations even if he had no idea of the existence of the law he broke for "ignorance of the law is no excuse," and knowledge of the regulation was not required under 18 U.S.C. § 834(f)); *United States v. Wilson*, 159 F.3d 280, 289 (7th Cir. 1998) (holding in the context of 18 U.S.C. §§ 922(g)(8) and 924(a)(2) that "knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law") (citations omitted); *Wagner*, 29 F.3d at 265-66 (citing *Int'l Minerals* and similarly interpreting § 6928(d)(2)(a) of the Resource Conservation and Recovery

Act ("RCRA")); *United States v. Metalite Corp.*, 2000 WL 1234389, at * 8 (N.D. Ill. July 28, 2000) (the scienter requirement of "knowing" under § 1319(c)(2)(A) of the CWA does not create a specific intent crime). *See also United States v. Kelley Technical Coatings, Inc.*, 157 F.3d 432 (6th Cir. 1998), *United States v. Hopkins*, 53 F.3d 533 (2d Cir. 1995), and *United States v. Weitzenhoff*, 35 F.3d 1275 (9th Cir. 1993) (all relying in part upon the public welfare doctrine to find that CWA defendants need not know of CWA permit requirements or legal duties).

Under Seventh Circuit precedent, establishing a "knowing" violation of a statute "only requires proof of knowledge by the defendant of the facts that constitute the offense," unless the text of the statute dictates a different result. *Wilson*, 159 F.3d at 289. The text of the CWA offers no evidence that Congress intended to create a specific intent standard for the crime of "knowingly violating" the CWA's provisions or an exception to the rule that mistake-of-law is no defense. This conclusion is buttressed by an examination of the CWA's legislative history. In 1987, Congress amended the criminal penalty provision of the CWA. Before 1987, the statute provided for criminal penalties for those who "willfully and negligently" violated the CWA. Expressing its intent to heighten enforcement efforts and create stiffer penalties for violations of CWA provisions, Congress in 1987 created two separate criminal sections: felony penalties for "knowing" violations and misdemeanor penalties for "negligent" violations. *See United States v. Sinskey*, 119 F.3d 712, 716 (8th Cir. 1997), *United States v. Wilson*, 133 F.3d 251, 262 (4th Cir. 1997), and *Hopkins*, 53 F.3d at 539-40 (all analyzing the legislative history of the CWA). *See also Weitzenhoff*, 35 F.3d at 1284 (quoting parts of the House and Senate reports accompanying the CWA and concluding that "the congressional explanations of the new penalty provisions strongly suggest that criminal sanctions are to be imposed on an individual who knowingly

5

engages in conduct that results in a permit violation, regardless of whether the polluter is cognizant of the requirements or even the existence of the permit"). The 1987 amendment to the CWA changing the criminal intent language from "willful" to "knowing," therefore, indicates that Congress did not intend a "knowing violation" to require specific intent of illegality. As such, we find that mistake-of-law defenses are not permitted under the explicit language and legislative history of the CWA.

### B. The Public Welfare Doctrine as Applied to the CWA

The second rationale upon which courts have excused a knowledge requirement as it applies to awareness of duties imposed by statute is the "public welfare doctrine." Courts use this doctrine in a variety of ways to justify a lack of knowledge requirement when the inherently dangerous or harmful nature of Defendants' activities should put them on notice that laws and regulations will apply to the conduct. The leading Supreme Court case on the issue of the public welfare doctrine is *Int'l Minerals*, 402 U.S. 558. In *Int'l Minerals*, the Court refused "to attribute to Congress the inaccurate view that the [ICC regulation] requires proof of knowledge of the law, as well as the facts" and the Court noted that where "dangerous . . . waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *Id.* at 563-65. *But see Staples v. United States*, 511 U.S. 600, 619 (1994) (distinguishing gun regulations from those public welfare regulations handling "dangerous or deleterious devices" and holding that a defendant charged with possession of a machine gun must know the gun had the characteristics that brought it within the statutory definition of a machine gun and rejecting

6

the government's argument that, because the public welfare doctrine applied, it need only prove general knowledge that the gun was of a dangerous nature).

Although the Seventh Circuit has yet to address this issue, four circuits have held that the CWA is a public welfare statute.[2] *See Kelley*, 157 F.3d at 439 n.4 (6th Cir. 1998); *Sinskey*, 119 F.3d at 716 (8th Cir. 1997); *Hopkins*, 53 F.3d at 537-38 (2d Cir. 1995); *Weitzenhoff*, 35 F.3d at 1284-85 (9th Cir. 1993). Moreover, the Seventh Circuit has found that the RCRA, a statute closely analogous to the CWA in that it regulates obnoxious waste material, is a public welfare statute. *See Wagner*, 29 F.3d at 266 (concluding that the government need not prove a defendant's knowledge of the RCRA's permit requirements). Therefore, we conclude that the CWA's status as a public welfare statute lends support for the government's position that mistake-of-law defenses are not applicable to CWA prosecutions.[3]

---

[2] The Supreme Court recently rejected a petition for writ of certiorari in a case in which the Ninth Circuit determined that the CWA is a public welfare statute. *Hanousek v. United States*, 528 U.S. 1102 (2000). Seven justices declined to issue a writ to reconsider the Ninth Circuit's interpretation of the CWA as a public welfare statute, and two justices dissented from the denial of the writ, questioning whether the CWA is a public welfare statute. Given the circumstances of the denial of the writ in *Hanousek*, we agree with the government that this supports the view that the CWA is a public welfare statute.

[3] Defendants' argument that the government's interpretation and application of the CWA as a public welfare statute imposes strict liability for violations of the CWA is not persuasive because a true strict liability crime would not require any element of intent. Under the CWA, however, the government must prove that a defendant "knowingly" failed to report wastewater violations. *See Staples*, 511 U.S. at 607 n.3 (stating that "[b]y interpreting such public welfare offenses to require at least that the defendant *know* that he is dealing with some dangerous or deleterious substance, we have avoided construing criminal statutes to impose a rigorous form of strict liability") (emphasis added); *Int'l Minerals*, 402 U.S. at 563-64 (rejecting the argument that the public welfare doctrine imposes strict liability and noting that mistake-of-fact remains a defense).

## C. Crimes of Commission v. Crimes of Omission

Defendants argue that because the charges against them in Count One of the indictment are crimes of omission – *i.e.*, Defendants' alleged failure to either report a wastewater violation or submit all wastewater test results to the MWRD – due process requires the government to prove that Defendants knew they had a duty to act.[4] *See Lambert v. California*, 355 U.S. 225, 228-29 (1958) (noting that the "rule that 'ignorance of the law will not excuse' is deep in our law," but holding in a five to four decision that the defendant could not be convicted of violating a Los Angeles municipal code provision requiring convicted felons to register with the city if the felon intended on staying in the city for more that five days without "actual knowledge of the duty to register or proof of the probability of such knowledge").[5] We disagree. As the

---

[4] Defendants also contend that strict liability does not apply to a crime of omission under the CWA, in that failure to report wastewater violations and to submit all test results are not public welfare offenses, and that the cases cited by the government deal solely with crimes of commission and not with crimes of omission. We have already addressed Defendants' strict liability argument as well as the issue of the CWA as a public welfare statute. *See supra* note 3 and pp. 6-7. As stated above, Defendants are incorrect in their assertion that applying the public welfare doctrine to the CWA establishes a strict liability criminal scheme. Moreover, the case law holding that the CWA is a public welfare statute does not distinguish between crimes of commission and crimes of omission.

[5] On its facts, *Lambert* is easily distinguishable from the instant case. In *Lambert*, the defendant took no action and the government could not demonstrate even a probability that the defendant was aware of the need to take action. Here, Defendants are charged with taking numerous actions surrounding their alleged failure to report wastewater violations. Moreover, unlike the defendant in *Lambert* who had no reason to know that she needed to register as a felon, Defendants Snook and Carusiello, Premcor's environmental manager and assistant environmental manager, respectively, had every reason to know that they needed to report wastewater violations. Finally, the Supreme Court has recognized that the *Lambert* opinion has limited application. *See Texaco, Inc. v. Short*, 454 U.S. 516, 537 n.33 (1982) ("[Lambert's] application had been limited, lending some credence to Justice Frankfurter's colorful prediction in dissent that the case would stand as 'an isolated deviation from the strong current of precedents -- a derelict on the waters of the law'"). Indeed, Defendants fail to cite a single case applying the *Lambert* decision in a situation analogous to the instant case.

8

legislative history makes clear, § 1319(c)(2)(A) of the CWA contains a single culpability standard and does not contain different *mens rea* requirements depending on whether an offense is classified as one of commission or omission. Defendants' position would require this Court to violate tenets of statutory construction by adding an element of "willfulness" into the CWA and would further require us to ignore the fact that Congress specifically amended § 1319(c)(2)(A) in 1987 by replacing the word "willful" with the current term "knowingly."

Furthermore, case law strongly supports the conclusion that § 1319(c)(2)(A) contains a single culpability standard. None of the relevant cases require a heightened *mens rea* requirement for crimes of omission. *See Int'l Minerals*, 402 U.S. at 562 (finding that, where a defendant committed a crime of omission in failing to describe the goods that it was transporting on shipping papers under ICC regulations, the defendant's lack of knowledge about the regulations was not a defense because there is "no reason why the word 'regulations' should not be construed as a shorthand designation for specific acts or omissions which violate the Act"); *Wilson*, 133 F.3d at 263 (quoting the *Int'l Minerals* Court's reference to "acts or omissions" and holding that "it is logical to conclude that Congress would have used a similar shorthand designation to incorporate the *mens rea* requirement . . . of the CWA without also intending to create a defense of ignorance of the law"); *Sinskey*, 119 F.3d at 712-17 (endorsing the district court's jury instruction that, where a defendant engaged in crimes of omission relating to his participation in a selective sampling scheme and his failure to report all tests results, the defendant needed to be aware of the conduct that resulted in the permit's violation, but not that his acts violated either the CWA or the permit at issue); *Weitzenhoff*, 35 F.3d at 1283 (affirming the district court's jury instruction stating that the government need not prove the defendants

9

knew that their CWA omissions were unlawful). Therefore, because the relevant case law does not distinguish between crimes of commission and crimes of omission regarding the *mens rea* requirement – indeed, the case law supports the view that the government need not prove that Defendants knew their omissions were unlawful – we reject Defendants' attempt to distinguish the two.[6]

## II. The *Mens Rea* Requirement for Conspiracy and Aiding and Abetting

Finally, Defendants argue that the offenses of conspiracy and aiding and abetting are separate and distinct offenses that require the government to prove that Defendants intended to enter into a conspiracy to commit the underlying CWA offenses and intended to aid and abet the commission of the underlying offenses, respectively. *See United States v. Irorere*, 228 F.3d 816, 823 (7th Cir. 2000) (stating that both the government's conspiracy charge and aiding and abetting theory of liability for heroin importation require a showing of specific intent). Thus, Defendants contend that the government's characterization of their possible arguments as "mistake-of-law" defenses is erroneous because evidence of Defendants' understanding of their obligations goes directly to an essential element of the government's burden of proof.

We disagree. While we recognize that the conspiracy and aiding and abetting charges are specific intent crimes requiring the government to prove that Defendants specifically intended to further the conduct at issue, we do not believe that these charges require a heightened culpability above that required for conviction on the underlying substantive CWA offenses. *See United*

---

[6] We note that Count One of the government's indictment charges Defendants with crimes that may properly be characterized as commissions in that Defendants are accused of taking numerous affirmative actions during the scope of their alleged conspiracy to fail to report wastewater violations to the MWRD.

States v. Reiswitz, 941 F.2d 488, 494-95 (7th Cir. 1991) (holding that "[a]s with aiding and abetting, it is enough if a conspirator has the same mental state as the underlying crime requires"). Therefore, the government must prove that Defendants *knowingly* became members of the conspiracy with an intention to further the conspiracy and that Defendants *knowingly* aided and abetted others in the commission of the CWA offenses, but the government need not establish that Defendants acted with specific intent to violate or disregard the CWA and the government need not prove that Defendants knew their conduct was unlawful. *See Hopkins*, 53 F.3d 536-47; *Weitzenhoff*, 35 F.3d at 1286. Thus, as a practical matter, Defendants are precluded from arguing at trial that mistake-of-law is an appropriate defense to a violation of the CWA, but Defendants are entitled to argue that the government has failed to meet its burden of proof that Defendants intended to enter into a conspiratorial agreement and that Defendants intended to aid and abet others.

## CONCLUSION

For the foregoing reasons, we grant the government's motion to bar Defendants' mistake-of-law defenses. (R. 54-1.) A status hearing will be held on June 28, 2001 at 10:00 a.m. to address all issues which will ensure a fair and efficient trial and to set a firm trial date for this pending indictment.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: June 7, 2001

11